**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

AMRITA MADRAY,                                           **MEMORANDUM OF**
                                                        **DECISION AND ORDER**
                                    Plaintiff,           10-CV-3841 (ADS)(WDW)

                    -against-

LONG ISLAND UNIVERSITY and JEFFREY
KANE as aider and abettor,

                                    Defendants.
--------------------------------------------------------X

<u>**APPEARANCES:**</u>

**The Law Offices of Joseph Ruotolo, LLC**
*Attorney for the Plaintiff*
42 Fire Island Avenue, Suite 120
Babylon, NY 11702
        By:  Joseph Carmine Ruotolo, Esq., Of Counsel

**Law Office of Robert Jacovetti, P.C.**
*Attorney for the Plaintiff*
65 Columbia Road
Rockville Centre, NY 11570
        By:  Robert Charles Jacovetti, Esq., Of Counsel

**Long Island University, Office of the General Counsel**
*Attorneys for the Defendants*
700 Northern Boulevard
Brookville, NY 11548
        By:  Catherine Murphy, Esq., Of Counsel

**SPATT, District Judge**.

        In this case, Amrita Madray ("Madray" or "the Plaintiff") alleges that her former employer

Long Island University ("LIU") and Dr. Jeffrey Kane, Vice President of Academic Affairs ("Dr.

Kane" and together with LIU "the Defendants") discriminated and retaliated against her by

denying her tenure and constructively discharging her from employment in violation of Title VII

of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law

("NYSHRL"). Presently before the Court is the Defendants' motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons that follow, the Defendants' motion is granted.

## I. BACKGROUND

### A. Factual Background

A more detailed recitation of the factual background of this case can be found in the Court's prior order with regard to the Plaintiff's motion to amend the complaint. See Madray v. Long Island Univ., 789 F. Supp. 2d 403 (E.D.N.Y. 2011). Familiarity with the facts in that decision is presumed.

In short, the Plaintiff, a female of Guyanese descent, was employed as an instructor, and later an assistant professor, in the library of the C.W. Post Campus, which is a part of Long Island University, from approximately 2001 until her resignation on March 6, 2009. During her employment, the focus of Madray's work was on plagiarism. In this regard, Madray created a number of faculty plagiarism websites, which the parties refer to as "digital products", which were used throughout the LIU libraries and presented to other universities.

In January of 2007, Madray submitted her first application for academic tenure. In April of 2007, defendant Dr. Jeffery Kane, Vice President of Academic Affairs, informed Madray that LIU had denied her tenure application. In January of 2008, Madray submitted a second application for academic tenure ("the 2008 tenure application"). On April 23, 2008, Dr. Kane informed Madray in a letter that LIU had denied her 2008 tenure application and that LIU would terminate her employment on August 31, 2008 ("the April 23, 2008 letter"). As a result, Madray filed a grievance with her Union challenging the denial in June of 2008. The parties settled the grievance, and Dr. Kane communicated the settlement to Madray in an August 8, 2008 letter, the

terms of which extended Madray's discretionary employment by two years, and granted her an additional opportunity to apply for tenure during the 2009–2010 academic year ("the August 8, 2008 letter").

In the August 8, 2008 letter, Dr. Kane further stated that, in order to properly consider Madray's third tenure application, it would be necessary for the school to develop a method for assessing "digital products", and that the "[t]he C.W. Post Library Personnel Committee and the Dean [Unagarelli] have agreed to work with the office of Academic Affairs to develop a method of assessing digital products . . . ."  (Second Am. Compl., ¶ 31.)  Madray alleges that, between August 2008 and February 2009, Dr. Kane failed to respond to the numerous attempts by her and Dean Unagarelli to contact him to discuss the development of such a method.

As a result, on March 6, 2009, Madray sent a letter to Dean Unagarelli stating her intent to resign her position effective March 20, 2009.  In her resignation letter, Madray stated that the reason for her resignation was Dr. Kane's refusal to meet with the C.W. Post Library Personnel Committee, Dean Unagarelli, or herself to develop a method for assessing her digital products.

**B.  Procedural History**

On February 23, 2009, Madray filed a complaint of discrimination with both the New York Division of Human Rights ("NYDHR") and the Equal Employment Opportunity Commission ("EEOC"), which complaint bears the file number 16G-2009-03202 ("the initial charge").  (Defs.' Ex. H.)  The initial charge includes a one page complaint and a four page NYDHR "Complaint Form".  In the initial charge the Plaintiff alleges that the Defendants discriminated against her on the basis of her color, race, national origin, and sex and that the discrimination consisted of the "Denial of tenure". (Id.)

According to the Plaintiff, she subsequently submitted an amended charge to the EEOC,

bearing the file number 520-2009-01954 ("the amended charge"). (Pl.'s Ex. A.) The amended charge includes a modified version of the initial charge, as well as an EEOC Charge of Discrimination that was first dated and signed March 6, 2009, re-signed before a notary on April 18, 2009, and stamped as received by the EEOC on April 24, 2009. According to a letter provided by the Plaintiff, the EEOC acknowledged the receipt of the amended charge on April 29, 2009, and stated that "A copy of the charge or notice of the charge will be sent to the respondent within 10 days . . . ." (Pl.'s Ex. B.)

The amended charge included a number of handwritten modifications to the NYDHR Complaint Form, which was still dated February 23, 2009. For example, where the form asks, "What did/does the discrimination consist of?", the original version states "Denied tenure" and the amended version continues to add "and I am subjected to a more rigorous process". (Compare Defs.' Ex. H with Pl.'s Ex. A.)

With respect to the newly added EEOC Charge of Discrimination, the first page lists April 1, 2008 as the earliest date of discrimination, and August 8, 2008 as the date the most recent discrimination took place. Where the form asks what the discrimination is based on, the Plaintiff checked the boxes for "RACE", "COLOR", "SEX" and "NATIONAL ORIGIN", but not the box for "RETALIATION". Where the form requests the particulars of her complaint, the Plaintiff includes the following typewritten statement with handwritten revisions:

> I was an Instructor with the LI University at the CW Post campus. I have been an Instructor since September 2001. I believe I was discriminated against because of my race/color (Indian), sex (female), national origin (Guyanese) when I was denied tenure by the Academic VP [on] April 23, 2008.
> I believe there were conflicting reasons for denying my tenure. There were other instructors with less comparable qualifications who were granted tenure before me. On August 8, 2008, I was only offered an extension of my temporary employment.

> I believe I was discriminated against because of my race/color, sex, national origin under Title VII of 1964 as amended, when I was denied tenure by the Academic VP [on] August 8, 2008 & April 23, 2008.

(Pl.'s Ex. A.)  The second page of the amended charge includes the following handwritten statement:

> I feel that I was discriminated and judged unfairly.
> The Vice President of Academic Affairs verbal and written reasons for not granting me tenure are contradictory and inconsistent.
> Various personnel files/records, my union representative and colleagues can substantiate that my treatment has been unjust, discriminatory and different.
> In addition, it is known that there have been more incidences among colleagues like myself with similar ethnicity and background who have experienced like treatment.  Different and stricter evaluation criteria and process were/are applied.

(Id.)

On May 25, 2010, Madray received a Right to Sue letter from the EEOC bearing the file number from the initial charge.  On August 20, 2010, Madray commenced this lawsuit by filing a complaint against LIU and Dr. Kane for discrimination and retaliation under Title VII and NYSHRL based on the denials of tenure and the termination of her employment.  Subsequently, on September 16, 2010, before the Defendants filed a responsive pleading, Madray amended the complaint as a matter of right, changing minor statements of fact as well as adding the fifth and sixth causes of action against Dr. Kane directly for discrimination and retaliation under the NYSHRL.

On June 2, 2011, the Court granted a motion by the Plaintiff to amend her complaint to: (1) amend the introductory paragraph of the complaint, which stated that the Plaintiff's complaint was "against defendant LONG ISLAND UNIVERSITY", to include "and JEFFREY KANE as aider and abettor"; and (2) include the date of the Plaintiff's resignation and therefore convert her claim for unlawful termination to one for constructive discharge.  On June 10, 2011

the Plaintiff filed the amended complaint, which the Defendants answered on June 23, 2011.  In the Second Amended Complaint, the Plaintiff alleges that:  (1) LIU discriminated against her on the basis of race and national origin in the denial of tenure and constructive discharge in violation of Title VII (Count I) and the NYSHRL (Count III); (2) LIU retaliated against her by denying her tenure and constructively discharging her based on complaints of discrimination in violation of Title VII (Count II) and the NYSHRL (Count IV); and (3) Dr. Kane similarly discriminated against her (Count V) and retaliated against her (Count VI) in violation of the NYSHRL.

On February 7, 2012, the Defendants moved to dismiss the Second Amended Complaint for failure to state a claim on the grounds that:  (1) the Plaintiff's causes of action alleging discriminatory denial of tenure are time-barred; (2) the Plaintiff failed to exhaust her administrative remedies on her claims of retaliation and constructive discharge; and (3) the Plaintiff fails to plead facts supporting an inference of discrimination.  Notably, although the Defendants move to dismiss all claims against them, the parties only address whether the Plaintiff's claims pursuant to Title VII are time-barred or unexhausted.  Thus, the Court similarly limits its analysis on these issues to the claims against LIU pursuant to Title VII, and addresses separately the claims against the Defendants pursuant to the NYSHRL.

## II.  DISCUSSION

### A. Legal Standard for a Motion to Dismiss

The Defendants move to dismiss the Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).  However, because the Defendants filed this motion after they submitted an answer to the complaint, it is properly classified as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)").  As a practical matter it does not alter the analysis because, in

general, "the standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining  whether a complaint states a plausible claim for relief will ... be a context–specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiffs' favor. Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir.2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal

pursuant to Fed. R. Civ. P. 12(b)(6).  Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir.

1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp.,

275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683,

40 L. Ed. 2d 90 (1974)).

    In addition, in deciding the Defendants' motion, the Court considers a number of

documents submitted by the parties.  Specifically, the Court considers the April 23, 2008 letter

and the August 8, 2008 letter, both of which were incorporated by reference in the complaint.

See Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005) (holding that, on a

motion to dismiss, the court may consider "facts stated in the complaint or documents attached to

the complaint as exhibits or incorporated by reference.").  In addition, the Court considers the

initial charge and amended charge, which the Plaintiff relied upon in drafting her complaint and

asserts as her basis for why she has exhausted her administrative remedies.  See Holowecki v.

Federal Exp. Corp., 440 F.3d 558, 565 (2d Cir. 2006) (considering the plaintiffs' EEOC filings,

even though they were not attached to the complaint, because "plaintiffs [ ] rely on these

documents" to satisfy the ADEA's exhaustion requirement); Chambers v. Time Warner, Inc.,

282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the

court may nevertheless consider it where the complaint relies heavily upon its terms and effect,

which renders the document integral to the complaint.") (internal quotation marks omitted); see

also Gallo v. Glen Cove City School Dist., No. 08-CV-3582, 2009 WL 1161818, at *4 (E.D.N.Y.

April 29, 2009) ("Moreover, with respect to administrative filings (such as the NYSDHR and the

EEOC) and decisions, the Court may consider such documents because they are public

documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims.").

Neither party objects to the Court's consideration of these documents. Although the parties submitted additional documents, including documents addressing whether the amended charge was properly filed with the EEOC and whether the Defendants developed a digital products assessment mechanism, the Court does not rely on these documents in reaching its decisions.

## B. As to the Discrimination Claims Based on the Denial of Tenure

Pursuant to Title VII, a charge of discrimination must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180-days of any alleged unlawful employment practice or 300-days where there is a State or local agency with authority to grant or seek relief from such practice. 42 U.S.C. § 2000e-5(e)(1). Because New York has its own anti-discrimination laws and enforcement agency, the statute of limitations for filing a charge of discrimination with the EEOC is 300-days after the alleged occurrence of an unlawful employment practice. Id.; Harris v. City of New York, 186 F.3d 243, 247 n.2 (2d Cir. 1999). Failure to timely file a charge with the EEOC renders the subject claim time-barred, preventing a claimant from bringing her claim in federal court. Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 133–34 (2d Cir. 2003). Three-hundred days prior to the Plaintiff's filing of her initial charge on February 23, 2009 is April 29, 2008. Thus, any alleged act that occurred before April 29, 2008 is time-barred.

Here, the Defendants argue that they denied the Plaintiff's 2008 tenure application on April 23, 2008, and therefore the Plaintiff's cause of action for denial of tenure pursuant to Title VII is time-barred. By contrast, the Plaintiff argues that the statute of limitations on her Title VII

denial of tenure claim began to run when she received the August 8, 2008 letter settling her grievance and offering her a two-year extension of her employment and a third opportunity to apply for tenure.

"It has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000). With respect to the denial of tenure, the United States Supreme Court held in Delaware State College v. Ricks, 449 U.S. 250, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980), that the filing limitations period on a denial of tenure claim commences at the time the tenure decision is officially made and communicated to the plaintiff. Id. at 258. The Supreme Court further held that where, as here, a plaintiff files a grievance challenging the denial of tenure, it does not toll or otherwise extend the running of the limitations period because "entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." Id. at 261; Joseph v. New York City Bd. of Educ., 171 F.3d 87, 90 (2d Cir. 1999) ("[T]he discriminatory action took place when the tenure decision was made, not when collateral reviews became final").

In the instant case, the Defendants sent the Plaintiff a letter on April 23, 2008 officially denying her 2008 tenure application and informing her that her employment would terminate on August 31, 2008. The Plaintiff does not dispute that she received this letter on or about April 23, 2008. As the Second Circuit recently reaffirmed in Lomako v. New York Institute of Technology, 440 F. App'x 1, 1 (2d Cir. Sept. 1, 2011), where the discrimination claims are based on the denial of reappointment—which the Court notes involves same type of conduct

underlying a claim for the denial of tenure—the date the plaintiff is notified of the official decision controls. In <u>Lomako</u>, the plaintiff attempted to rely on <u>Ricks</u> for the proposition that the accrual date for his discrimination claims was the date he received his terminal contract, not the date that he was notified that he would not be reappointed. In rejecting this argument, the district court held that, "It is clear that Lomako 'knew or should have known' of the adverse employment decision on May 23, 2005; the fact that he was hopeful that the decision would be reconsidered, that he received another letter that later confirmed this determination, or that his employment at NYIT did not actually end until 2006, does not change this result". <u>Lomako v. N.Y. Inst.of Tech.</u>, No. 09-CV-6066, 2010 WL 1915041, at *5 (S.D.N.Y. May 12, 2010). The Second Circuit affirmed the district court's finding, holding that, because "[the plaintiff's] claims were based upon the decision to deny his reappointment", the relevant accrual date was the date he was notified of the decision, not the date he received his terminal contract. <u>Lomako</u>, 440 F. App'x at 1.

The Plaintiff attempts to distinguish <u>Lomako</u> on the ground that, unlike the plaintiff in <u>Lomako</u> who was "hopeful" that the decision would be reconsidered, her tenure application actually was reconsidered. In this regard, the Plaintiff argues that the filing period began to run when she received the August 8, 2008 letter, which she characterizes not as a confirmation of the April 23, 2008 denial, but rather as a letter that "extended her candidacy so that her work could be fully evaluated using a newly developed assessment mechanism". (Pl.'s Opp. at 11.) The Court disagrees.

While the August 8, 2008 letter may have extended her overall candidacy for a tenure position, it did not re-evaluate the denial of her 2008 tenure application. Rather, as the Plaintiff herself admits, it provided her with an opportunity to submit a *third* application for tenure in the

2009–2010 academic year.  (See Second Am. Compl., ¶ 36 (referring to her "tenure application

for the academic year 2009–2010"; Pl.'s Opp. at 3 (stating that the August 8, 2008 letter "offered

the opportunity to Plaintiff to submit yet a third tenure application in the following academic

year".).)

The fact that the grievance procedure resulted in an opportunity for the Plaintiff to submit

a third tenure application does not affect the *finality* of the Defendants' decision, as expressed in

the April 23, 2008 letter, to deny the Plaintiff's 2008 tenure application.  See Miller v. Int'l Tel.

& and Telegraph Corp., 755 F.2d 20, 24 (2d Cir. 1985) ("As in Ricks, supra, the mere possibility

that the decision might be reversed was not enough to label it advisory or ineffective for time-bar

purposes."); see also Hartz v. Adm'rs of Tulane Educ. Fund, 275 F. App'x 281, 287–88 (5th Cir.

2008) ("While it is true that the Grievance Committee recommended that Hartz be granted tenure

even after the dean notified her of the EFC's decision, the Supreme Court was clear in Ricks that

grievance procedures, no matter the outcome therein, do not alter the date that the limitations

period begins to run."); Harel v. Rutgers, State Univ., 5 F. Supp. 2d 246, 263 (D.N.J. 1998)

("Plaintiff received unequivocal notice of his tenure denial in April 1993; he was obligated to

filed an EEOC charge within 180 days of this date. His grievance and the eventual decision to

remand for another evaluation does not affect the permanence of this initial decision nor does it

toll the running of the 180–day period.").

Furthermore, each denial of tenure constitutes an isolated employment decision that is

considered a discrete act under the statute.  See Ricks, 449 U.S. at 257–58; see also Tademe v.

Saint Cloud State Univ., 328 F.3d 982, 988 (8th Cir. 2003) (holding that tenure and promotion

decisions "were discrete acts that constituted separate employment practices"); Harel, 5 F. Supp.

2d at 262 ("With regard to frequency, the plaintiff alleges two discriminatory acts during his nine

year employment at the University—the two decisions not to grant him tenure. The Court views these acts as isolated employment decisions as opposed to a recurring pattern of discrimination.").

It is well-settled that "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and "each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Thus, because each alleged discriminatory denial of tenure "constitutes a separate actionable unlawful employment practice", the fact that the August 8, 2008 letter provided the Plaintiff an opportunity to apply for tenure a third time does not extend the statute of limitations on the Plaintiff's claim regarding the denial of her 2008 tenure application. Id. at 114; cf. Stewart v. Rutgers, The State Univ., 120 F.3d 426, 433 (3d Cir. 1997) (affirming district court's conclusion that the plaintiff's discrimination claim based on his 1992–1993 tenure denial was time-barred, but "reject[ing] the notion that the events surrounding that denial [were] not relevant evidence which [the plaintiff] could use at trial" on his timely discrimination claim based on his 1994–1995 tenure denial); Kulkarni v. City Univ. of New York, No. 01-CV-3019, 2001 WL 1415200, at *3–4 (S.D.N.Y. Nov. 13, 2011) (dismissing the plaintiff's claims that he was discriminatorily denied promotions to the position of distinguished professor in 1988, 1992, and 1998 as time-barred and holding that, because the denial of his 2000 application occurred after he filed his EEOC charge, that claim was subject to dismissal for failure to exhaust administrative remedies).

Accordingly, the fact that the August 8, 2008 letter provided a different date for the termination of the Plaintiff's employment, and an additional opportunity to apply for tenure, does not alter the Court's finding that the official denial of her 2008 tenure application was

communicated to the Plaintiff on April 23, 2008. The Plaintiff filed her initial charge 304 days after April 23, 2008. Therefore, the Court grants the Defendants' motion to dismiss the Plaintiff's Title VII denial of tenure claim against LIU based on the April 23, 2008 denial, as time-barred.

## C.  As to the Retaliation and Constructive Discharge Claims

The Defendants also assert that the Court should dismiss the Plaintiff's retaliation and constructive discharge claims because those allegations were not included in Plaintiff's initial charge or amended charge, and therefore she has failed to exhaust her administrative remedies. As previously stated, the Court only addresses this argument as it relates to those claims in the first and second causes of action against LIU pursuant to Title VII. The Plaintiff does not deny that she failed to expressly allege retaliation or constructive discharge claims in either of her administrative charges. Rather, she contends that the Court has jurisdiction over the claims because they are "reasonably related" to the allegations made in her amended charge.

As an initial matter, although the Plaintiff relied on the amended charge in her motion to amend, and again in opposition to the instant motion to dismiss, she only references the initial charge in her complaint. (Second Am. Compl., ¶ 37; id., Ex. A (EEOC right-to-sue letter only referencing the file number for the initial charge).) For their part, the Defendants feign ignorance of the amended charge, but do not explicitly state that they never received it. Rather, they submit a letter from the EEOC stating that it does not have a record of the amended charge or file number 520-2009-01954. (Defs.' Ex. J.) Thus, issues of fact exist with respect to whether the Plaintiff properly filed the amended charge. However, because the Court ultimately finds that the Plaintiff has failed to exhaust her administrative remedies even considering the more detailed allegations in the amended charge, the Court does not need to reach the issue of whether

it was properly filed with the EEOC or incorporated in the complaint.

Before filing a Title VII claim in federal court, a plaintiff must first exhaust all administrative remedies.  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 83 (2d Cir. 2001) ("Exhaustion of remedies is a precondition to [a] suit" under Title VII) (citing Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)).  "The purpose of the exhaustion requirement is to provide notice to the employer and to encourage conciliation and voluntary compliance." Hansen v. Danish Tourist Bd., 147 F. Supp. 2d 142, 151 (E.D.N.Y. 2001).  That purpose "would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC."  Miller v. ITT Corp., 755 F.2d 20, 26 (2d Cir. 1985).

However, the Second Circuit has recognized that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency."  Shah v. New York State Dep't of Civil Serv., 168 F.3d 610, 614 (2d Cir. 1999).  Although "[p]re-charge, as well as post-charge, conduct is subject to the reasonable relation test", Chandler v. AMR Am. Eagle Airline, 251 F. Supp. 2d 1173, 1178 (E.D.N.Y. 2003), all of the conduct underlying the Plaintiff's retaliation and constructive discharge claims occurred prior to the filing of the amended charge.

Specifically, the Plaintiff alleges that she was constructively discharged on March 6, 2009 because "Kane's two previous tenure denials, and his refusal to respond to repeated requests for information about the evaluation mechanism, lead [her] to conclude she had no option but to end her employment with Defendants".  (Pl.'s Opp. at 8.)  Although the Plaintiff submitted her letter of resignation on the same day that she first signed the amended charge, she stated in the amended charge that she "was an Instructor with the LI University at the CW Post campus".  (Pl.'s Ex. A (emphasis added).)  In addition, the Plaintiff re-signed the amended

charge before a notary on April 18, 2009, over a month after she submitted her resignation. With respect to the retaliation claims, the Plaintiff alleges that the Defendants retaliated against her for her grievance to the Union in June of 2008, which significantly pre-dates her amended charge. (Pl.'s Opp. at 3.)

Where, as here, newly asserted claims are based on conduct that occurred prior to the filing of the EEOC charge, they are only "reasonably related" to the allegations in the EEOC charge if the claim "would fall within the scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination". Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402 (2d Cir. 1993) (internal quotation marks and citation omitted). The "reasonably related scope" doctrine "is essentially an allowance of 'loose pleading' and is based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering.'" Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (alteration in original) (quoting Butts, 990 F.2d at 1402).

The Second Circuit "frequently invoke[s] the 'reasonably related' doctrine when the factual allegations made in the administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised." Mathirampuzha v. Potter, 548 F.3d 70, 77 (2d Cir. 2008). "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Deravin, 335 F.3d at 201 (internal quotation marks and citations omitted). "The central question is whether the complaint filed with the EEOC gave the agency adequate notice

to investigate discrimination on both bases." Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (internal quotation marks and citations omitted).

### 1. Constructive Discharge

The Plaintiff asserts that her constructive discharge claim is "reasonably related" to her other discrimination claims under the "loose pleading" standard because she stated in the amended charge that she was "discriminated against . . . when [she] was denied tenure by the Academic V.P." and that "[her] treatment has been unjust, discriminatory and different". (Pl.'s Opp. at 9.) However, the allegation that "[her] treatment has been unjust, discriminatory and different" is "too vague" to serve as a predicate for her constructive discharge claims. Butts, 990 F.2d at 1403 (holding that the plaintiff's allegations in her charge that "she had 'consistently been the target of discriminatory practices and treatment' . . . was insufficiently specific to enable the EEOC to investigate it"). As the Second Circuit noted in Butts:

> Were [the court] to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated.

Id.; see also Abram v. City of Buffalo, No. 04-CV-441, 2011 WL 334297, at *6 (W.D.N.Y. Jan. 28, 2011) ("While precise pleading is not required for purposes of exhaustion, a complete absence of specificity defeats a plaintiff's subsequent claims.") (internal citations omitted).

Moreover, although the alleged discriminatory denial of tenure is relevant background evidence to the Plaintiff's constructive discharge claim, the denial of tenure and constructive discharge are separate discrete acts. See Petrosino v. Bell Atl., 385 F.3d 210, 220 (2d Cir. 2004) (holding that a failure to promote and constructive discharge are discrete acts). In Butts, the Second Circuit held that allegations which are time-barred themselves cannot serve as predicates

17

for reasonably related claims. 990 F.2d at 1403. Thus, the Plaintiff is not permitted to assert a cause of action for constructive discharge solely on the basis of her untimely denial of tenure claim, because doing so would allow her to "breathe new life into her denial of tenure claim by simply incorporating it into her [constructive discharge] claim". Hartz v. Adm'rs of Tulane Educ. Fund, 275 F. App'x 281, 289 (5th Cir. 2008) (reversing lower court and holding that the denial of tenure is a discrete act, and therefore, even if it is "intertwined" with a hostile work environment claim, it will not resurrect an otherwise untimely claim); see also McGuire v. U.S. Postal Serv., 749 F. Supp. 1275, 1287 (S.D.N.Y.1990) ("Judicial claims which serve to amplify, clarify or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate.") (internal quotation marks and citation omitted). As set forth below, aside from the alleged discriminatory denial of her 2008 tenure application, there are no facts regarding subsequent discriminatory acts or the circumstances of the Plaintiff's termination that would place the EEOC on notice of the Plaintiff's claim that she was constructively discharged.

First, while the amended charge references an offer to extend her temporary employment, it makes no mention of whether she accepted the offer. Thus, although the Plaintiff states in the amended charge that she is no longer employed at LIU, there is no basis from which the EEOC could presume that her employment ended due to discriminatory acts separate and apart from the denial of her 2008 tenure application. See Rendon v. District of Columbia, No. 85-CV-3899, 1986 WL 15446, at *4 (D.D.C. 1986) ("Even if the EEOC knew plaintiff had quit her job, the EEOC could not reasonably presume that allegedly retaliatory actions caused the termination; plaintiff may have quit for any number of reasons.").

Moreover, in addition to the denials of tenure, the Plaintiff bases her constructive discharge claim on the Defendants' allegedly discriminatory acts in conjunction with her third application for tenure. In particular, the Plaintiff alleges that she was forced to resign because Dr. Kane refused to develop a method for assessing the contribution of her digital products, and therefore it was futile for her to submit a third tenure application. However, the Plaintiff neither mentions that the Defendants offered her a third opportunity to apply for tenure in the amended charge, nor does she allege any conduct that would alert the EEOC to the existence of discriminatory acts post-dating the denial of the 2008 tenure application. See Wiley v. Citibank, N.A., No. 98-CV-1139, 2000 WL 122148, at *4 (S.D.N.Y. Feb. 1, 2000) ("[T]he Plaintiff alleges factually distinct discriminatory practices in her constructive discharge claim that would require an investigation of events differing in time and nature from the DHR investigations of the two original complaints. Thus, Plaintiff's constructive discharge claim is not reasonably related to her earlier claims and is accordingly dismissed . . . ."); see also Senno v. Elmsford Union Free School Dist., 812 F. Supp. 2d 454, 470 (S.D.N.Y. 2011) ("Although the disciplinary action alleged in the Complaint stemmed from the same sexual affair that gave rise to Plaintiff's EEOC complaint, there is nothing to suggest that an EEOC investigation into the remedial action taken by Defendants with regard to Dr. Calvi's conduct would address disciplinary action later taken against Plaintiff."); cf. Ximines v. George Wingate High School, 516 F.3d 156, 158-59 (2d Cir. 2008) (holding that a discrimination claim based on a September 2004 failure to promote was reasonably related to the plaintiff's EEOC charge where, in addition to complaints about age discrimination in other attempts to secure a promotion, the plaintiff referenced her interview for the September 2004 promotion).

Finally, even assuming that the Plaintiff's references to discriminatory conduct in the amended charge as being subject to a "more rigorous process" and a "[d]ifferent selection criteria", were specific enough to support a claim for denial of tenure, the Plaintiff does not allege that this conduct constituted a pattern or practice so that the EEOC would be on notice to investigate beyond the denial of the 2008 tenure application into other potential consequences. See Ong v. Cleland, 642 F.2d 316, 318 (9th Cir. 1981) (plaintiff's administrative charge of discrimination in promotion did not encompass later judicial complaint of constructive discharge, in part because her administrative complaint did not allege that defendant had engaged in a pattern or practice of discrimination against the plaintiff).

Without notice, the EEOC's investigation into the Plaintiff's denial of tenure claim would not encompass a constructive discharge claim because "[a] constructive discharge is not a factor or component of a promotion denial claim and therefore, it would not likely arise in an EEOC investigation of discriminatory promotion practices." Peterson v. Ins. Co. of North America, 884 F. Supp. 107, 111 (S.D.N.Y. 1995); see Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 25–26 (2d Cir. 1985) (holding that "[t]here would be no reason for the EEOC to investigate [a] failure to rehire in connection with the claim of alleged discriminatory discharge unless the former were asserted as part of that claim"); Albano v. Schering-Plough Corp., 912 F.2d 384, 386 (9th Cir. 1990) ("Here, it is undisputed that Albano's EEOC charge relates only to age discrimination in failure to promote. In comparison, Albano's civil complaint alleged age discrimination resulting in his constructive discharge. We have previously held that a constructive discharge claim is not like or reasonably related to a charge of discrimination in promotion." (citing Ong v. Cleland, 642 F.2d 316, 320 (9th Cir. 1981)); Wishnoff v. Rubin, No. 93-CV-17, 1995 WL 591143, at *2 (W.D.N.Y. Sept. 11, 1995) ("[C]ourts that have specifically addressed this issue have held that a

'constructive discharge claim is not like or reasonably related to a charge of discrimination in promotion' and thus may not be raised for the first time in federal court when an administrative action had been filed previously." (citing <u>Albano</u>, 912 F.2d at 386)) (collecting cases).

Thus, the Court finds that the Plaintiff failed to exhaust her constructive discharge claim because it was neither within the scope of the amended charge nor could it reasonably have been expected to grow out of the EEOC investigation. Therefore, the Defendants' motion to dismiss the Plaintiff's claim that LIU constructively discharged her in violation of the provisions of Title VII is granted.

### 2. Retaliation

The Plaintiff alleges that the denial of her 2008 tenure application and her constructive discharge were in retaliation for her grievance to the Union in June of 2008. As an initial matter, the Court notes that the Plaintiff did not allege in the complaint that her grievance to the Union was premised on complaints of discrimination. Nevertheless, for purposes of this motion, the Court construes the Plaintiff's references in the complaint to her grievance with the Union as one that complained of discrimination.

The Plaintiff premises her retaliatory-denial of tenure claim on the August 8, 2008 letter, which post-dates the grievance to her Union. However, as the Court previously held, the Defendants denied the Plaintiff's tenure application on April 23, 2008. Thus, the subsequent complaint to the Union cannot serve as a basis for her retaliatory denial of tenure claim. <u>See Pinero v. Long Island State Veterans Home</u>, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) ("There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity."). In addition, the Plaintiff cannot rely on the August 8, 2008 letter to serve as a basis for a retaliation claim because the letter offered the Plaintiff a conditional two-

year extension of her discretionary employment and a third opportunity to apply for tenure. This does not constitute an adverse employment action. See Penny v. Winthrop-Univ. Hosp., 883 F. Supp. 839, 845 (E.D.N.Y. 1995) (Spatt, J.) (denying a plaintiff's motion to amend to add a retaliation claim based on a February 3, 1992 letter from the defendant offering the plaintiff conditional employment in an effort to settle a grievance regarding her allegedly discriminatory termination because "[i]n the Court's view, if anything, the February 3, 1992 letter constitute[d] the opposite of an adverse action, because it conditionally offer[ed] the plaintiff reinstatement of her already terminated position").

Nevertheless, even assuming the Plaintiff could rely on the August 8, 2008 letter or state a claim for constructive discharge, the Court would still find that she has failed to exhaust her administrative remedies on her retaliation claim. "Where the EEOC charge alleges discrimination but not retaliation, the reasonable scope of the agency's investigation cannot be expected to encompass allegations of retaliatory motive." Gambrell v. Nat'l R.R. Passenger Corp., 2003 WL 282182 (S.D.N.Y. Feb. 3, 2003) (citing Chinn v. City Univ. of New York Sch. of Law, 963 F. Supp. 218, 223 (E.D.N.Y. 1997)); see Fleming v. Verizon N.Y., Inc., 419 F. Supp. 2d 455, 462 (S.D.N.Y. 2005).

In the amended charge, the Plaintiff fails to allege any facts regarding retaliatory conduct or complaints that would ascribe a retaliatory motive to the Defendants or place retaliation within the scope of the EEOC investigation. Within the amended charge, both the DHR Complaint Form and the EEOC Charge of Discrimination form include places for the Plaintiff to indicate whether she is alleging retaliation. However, the Plaintiff left the relevant portions of both forms blank. In addition, the Plaintiff does not state in the amended charge that she ever complained about discrimination prior to or after the denial of tenure, let alone that she complained to the

Union or to the Defendants.  Because the Plaintiff's retaliation claim was neither included in the amended charge nor includes facts that would place retaliation within the scope of the EEOC investigation, the Plaintiff's retaliation claim is not "reasonably related" to her claims that the Defendants discriminated against her based on her race or national origin.  Thus, the Court finds that the Plaintiff's retaliation claim under Title VII is not exhausted and grants the Defendants' motion to dismiss this claim.  See Mathirampuzha v. Potter, 548 F.3d 70, 76, 78 (2d Cir. 2008) ("The administrative complaint, in other words, alleged a single act of discrimination: Sacco's aggressive behavior toward the plaintiff on September 29, 2003. Nowhere did the plaintiff assert or imply a retaliatory motive for Sacco's conduct. . . . The plaintiff's EEO complaint contains no factual allegations sufficient to alert the EEO to the possibility that Sacco's assault was the product of a retaliatory motive.").

**D.  As to the Plaintiff's Causes of Action under the NYHRL**

The Court has dismissed the Plaintiff's claims pursuant to Title VII.  The Court declines to extend supplemental jurisdiction over the Plaintiff's state law claims premised on the same alleged discriminatory conduct.  See Crespo v. New York City Transit Auth., No. 01-CV-671, 2002 WL 398805, at *10 (E.D.N.Y. Jan. 7, 2002) ("Because the analysis of Crespo's harassment and hostile work environment claims under the [NY]HRL would be the same as the analysis of those claims under Title VII, permitting Crespo to assert those claims after the Court has dismissed the corresponding claims under Title VII would essentially allow Crespo to get the claims into this Court through the courthouse's back door. In such a situation, it is more appropriate for the Court to decline to exercise supplemental jurisdiction over the state law claims.").  Accordingly, the Court grants the Defendants' motion to dismiss counts three through six of the Plaintiff's Second Amended Complaint, without prejudice.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Defendants' motion to dismiss counts one and two of the Plaintiff's complaint asserting claims against LIU for denial of tenure, constructive discharge and retaliation in violation of Title VII is granted with prejudice, and it is further

**ORDERED,** that the Defendants' motion to dismiss counts three through six of the Plaintiff's complaint alleging violations of the NYHRL is granted without prejudice, and it is further,

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated:  Central Islip, New York
July 16, 2012


___/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge